**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| CARL PLOESSER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| v. | )    Case No. 4:24-CV-01402-SPM |
| | ) |
| FRANK BISIGNANO, | ) |
| Commissioner of Social Security,[1] | ) |
| | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

This is an action under 42 U.S.C. § 405(g) for judicial review of the final decision of

Defendant Frank Bisignano, Commissioner of Social Security (the "Commissioner") denying the

application of Plaintiff Carl Ploesser ("Plaintiff") for Disability Insurance Benefits ("DIB") under

Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* (the "Act"). The parties consented to

the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). ECF No. 6.

Because I find the decision denying benefits was supported by substantial evidence, I will affirm

the Commissioner's denial of Plaintiff's application.

---

[1] Frank Bisignano is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the
Federal Rules of Civil Procedure, Frank Bisignano is substituted as the defendant in this suit. No
further action need be taken to continue this suit by reason of the last sentence of section 205(g)
of the Social Security Act, 42 U.S.C. § 405(g).

### I.     BACKGROUND

On November 16, 2021, Plaintiff applied for DIB. (Tr. 177-78). His application was denied initially and on reconsideration. (Tr. 91-95, 97-101). Plaintiff filed a Request for Hearing by Administrative Law Judge ("ALJ"). (Tr. 102-03). At the hearing before the ALJ on December 12, 2023, Plaintiff testified, *inter alia*, that he worked in a machine shop for 33 years but was laid off in 2015; that he stepped in a hole and twisted his back in 2018, after which he had lower back pain going down his left leg; that he underwent treatment for his back pain in 2018, including injections; that in 2019 and 2020 he continued to have pain in his lower back and left leg; that the pain made it difficult or impossible to do things like pulling his grandchildren in a wagon; that he had to lie down a couple of times a day due to pain; that during this period, he took over-the-counter medications; and he that he sought treatment for back pain again in 2021 and underwent surgery. (Tr. 29-60, 62-64).

On January 22, 2024, the ALJ issued an unfavorable decision. (Tr. 11-18). Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's Appeals Council. (Tr. 171-73). The Appeals Council denied the request for review in a decision dated August 29, 2024. (Tr. 1-7). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

The Court accepts the facts as set forth in the parties' respective statements of fact and responses. The Court will cite specific portions of the transcript as needed to address the parties' arguments.

### II.     STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Hum.*

*Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). Under the Act, a person is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). *Accord Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. § 404.1520(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if the claimant is, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the [twelve-month duration requirement in § 404.1509], or a combination of impairments that is severe and meets the duration requirement"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii); *McCoy*, 648 F.3d at 611. To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R.

3

§ 404.1520(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner finds the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 404.1520(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner assesses the claimant's residual functional capacity ("RFC"), 20 C.F.R. § 404.1520(a)(4), which is "the most [a claimant] can still do despite [his or her] limitations," 20 C.F.R. § 404.1545(a)(1). *See also Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). At Step Four, the Commissioner determines whether the claimant can return to his or her past relevant work by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant is found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c)(2); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of

other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 404.1560(c)(2).

### III.   THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff did not engage in substantial gainful activity from his alleged onset date of September 11, 2018, through his date last insured of March 31, 2021; that Plaintiff had the severe impairment of degenerative disc disease of the cervical spine and lumbar spine with radiculopathy; and that through the date last insured, Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 13-15). The ALJ found that through the date last insured, Plaintiff had the RFC to perform the full range of medium work as defined in 20 C.F.R. § 404.1567(c). (Tr. 15). At Step Four, relying on the testimony of a vocational expert, the ALJ found Plaintiff was capable of performing his past relevant work as a machinist as it is generally performed. (Tr. 17-18). Thus, the ALJ found Plaintiff was not under a disability, as defined in the Act, at any time from the alleged onset date through the date last insured. (Tr. 18).

### IV.   STANDARD FOR JUDICIAL REVIEW

The decision of the Commissioner must be affirmed if it "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Ford v. Astrue*, 58 F.3d 979, 981 (8th Cir. 2008)); *see also Estes v. Barnhart,* 275 F.3d 722, 724 (8th Cir. 2002); 42 U.S.C. § 405(g). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229

5

(1938)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942 (quotation marks omitted). *See also Biestek*, 587 U.S. at 103 ("Substantial evidence . . . means— and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consol. Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

The Court reviews de novo whether the Commissioner's determination was based on legal error. *Dewey v. Astrue*, 509 F.3d 447, 449 (8th Cir. 2007) (citing *Miles v. Barnhart*, 374 F.3d 694, 698 (8th Cir. 2004) & *Keller v. Shalala,* 26 F.3d 856, 858 (8th Cir. 1994)). "Legal error may be an error of procedure, the use of erroneous legal standards, or an incorrect application of the law." *Collins v. Astrue,* 648 F.3d 869, 871 (8th Cir. 2011) (internal citations omitted).

## V.   DISCUSSION

Plaintiff challenges the ALJ's decision on two grounds: (1) that the RFC is not supported by substantial evidence; and (2) that the decision lacks a proper evaluation of Plaintiff's pain. The

6

Court has reviewed the entire transcript and the parties' briefs. After careful review of the record, for the reasons stated below and in the Commissioner's brief, the Court finds that the ALJ's decision is free from legal error and that record as a whole contains substantial evidence to support the ALJ's finding that Plaintiff was not disabled prior to March 31, 2021, the date last insured.

### A.      The RFC Assessment

The Court first addresses Plaintiff's argument that the RFC assessment is not supported by substantial evidence and is not supported by any medical evidence. A claimant's RFC is "the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ determines a claimant's RFC "based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of [his or her] limitations." *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) (quoting *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015))."[T]he RFC determination is a 'medical question,' that 'must be supported by some medical evidence of [the claimant's ability to function in the workplace.'" *Noerper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020) (quoting *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017)). However, "the RFC is a decision reserved to the agency such that it is neither delegated to medical professionals nor determined exclusively based on the contents of medical records." *Noerper*, 964 F.3d at 744 (citing *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005)). "Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case." *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004) (citing *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000), & *Landess v. Weinberger*, 490 F.2d 1187, 1188 (8th Cir. 1974)). "An ALJ is required to obtain additional medical evidence if the existing medical evidence is not a sufficient basis for a decision." *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994).

"If an applicant for disability benefits is not insured for Title II purposes, then [the Court] only consider[s] the applicant's medical condition as of his or her date last insured. *Turpin v. Colvin*, 750 F.3d 989, 993 (8th Cir. 2014) (citing *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997)).

After careful review of the record, the Court finds that the RFC assessment in this case was supported by substantial evidence, including medical evidence. The medical records dated prior to the March 31, 2021, date last insured reasonably support a finding that Plaintiff did not have disabling impairments prior to that date. Around the time of the alleged onset date in mid-September 2018, Plaintiff had an episode of significant lower back pain, radiating to his leg. He received treatment for approximately two months, including medications, epidural steroid injections, and physical therapy, and an MRI showed advanced degenerative change and loss of disc height at multiple levels in the lumbar spine. However, after November 2018, Plaintiff apparently did not seek medical treatment for lower back or leg pain again for more than two and a half years—until well after his March 31, 2021, date last insured. When he visited his primary care provider in August 2019, he reported stress and poor sleep but not back pain or leg pain. (Tr. 368).[2] When he presented to the hospital after a fall in September 2019, his review of systems was negative for back pain, and examination showed a full passive range of motion without pain, a normal range of motion, no spinous process tenderness or muscular tenderness, normal strength and sensation in the upper and lower extremities, and normal gait. (Tr. 427-30). In June 2020 and

---

[2] The Court finds the 2019 and 2020 treatment notes from Plaintiff's primary care physician to be largely illegible. However, Plaintiff's description of these treatment notes does not indicate that Plaintiff complained of back or leg pain at those visits, *see* ECF No. 16-1, at ¶¶ 7, 10-11, nor does the Court see any indication of such complaints in the notes.

December 2020, Plaintiff had FaceTime visits with his primary care physician, at which neither lower back pain nor leg pain was mentioned and at which his other conditions were noted to be stable. (Tr. 327, 340). Plaintiff also testified that he took only over-the-counter medications for his back pain during this time. (Tr. 38-39). Plaintiff's lack of medical treatment for more than two years, combined with the normal objective findings in September 2019, support the ALJ's finding that the significant back and leg problems near the onset date did not persist for more than a couple of months during the relevant period.

The records dated after the date last insured are also consistent with the ALJ's conclusion. On August 6, 2021—several months *after* his March 31, 2021, date last insured—Plaintiff again sought treatment for back and leg pain. On that date, he reported "a long-standing history of back and intermittent leg pain and numbness that has become progressively worse *over the last four months.*" (Tr. 632) (emphasis added). The progressive worsening would thus have begun *after* the date last insured. Although Plaintiff subsequently had an MRI that showed significant abnormalities and underwent treatment including medications, injections, physical therapy, and ultimately surgery, it was reasonable for the ALJ to conclude that these did not reflect the severity of Plaintiff's impairments prior to the date last insured.

Plaintiff argues that remand is required because the RFC determination lacks support from any medical opinion assessing Plaintiff's physical ability to perform basic work activities. He argues that the ALJ inappropriately drew his own inferences from medical reports and raw medical data instead of obtaining an opinion from a medical source or advisor. The Court disagrees. The absence of medical opinion evidence to support the RFC does not necessarily require remand. *See, e.g., Zeiler v. Barnhart*, 384 F.3d 932, 936 (8th Cir. 2004) (lack of opinion evidence relevant to RFC did not require remand where the where ALJ properly considered the available medical

9

and testimonial evidence). On the specific facts here, including the ALJ's consideration of normal objective findings in 2019 and the complete absence of treatment for the relevant conditions for more than two years prior to the date last insured, the Court finds the evidence was sufficient for the ALJ to reach an RFC finding without obtaining additional medical evidence. The Court notes that "[i]t is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's RFC." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001).

The Court acknowledges that the record contains conflicting evidence related to the severity of Plaintiff's physical impairments and Plaintiff's RFC, and that the ALJ could have reached a different conclusion. However, this Court's task is not to reweigh the evidence presented to the ALJ. The ALJ's weighing of the evidence here fell within the available "zone of choice," and the Court cannot disturb that decision merely because it might have reached a different conclusion. *See Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011).

### B.  The ALJ's Pain Evaluation

Plaintiff's second argument is that the ALJ's decision lacks a proper pain evaluation. He argues that the ALJ failed to consider several critical factors affecting Plaintiff's treatment history (including limited access to health care during the COVID-19 pandemic and Plaintiff's son's 2019 death). He also argues that the ALJ erred by disregarding evidence dated shortly after the date last insured that was relevant to Plaintiff's condition during the insured period. He also argues that there is no express or meaningful discussion of several of the factors relevant to an assessment of subjective complaints.

"When evaluating the claimant's subjective complaints, the ALJ must consider all of the evidence, including objective medical evidence, the claimant's work history, and evidence relating to the *Polaski* factors: (i) the claimant's daily activities; (ii) the duration, frequency, and intensity

of the claimant's pain; (iii) precipitating and aggravating factors; (iv) the dosage, effectiveness, and side effects of medication; and (v) the claimant's functional restrictions." *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016) (citing *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984)). *See also* 20 C.F.R. § 404.1529(c). "The ALJ is not required to discuss each *Polaski* factor as long as 'he acknowledges and considers the factors before discounting a claimant's subjective complaints.'" *Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010) (quoting *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009)). "The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *10 (Oct. 25, 2017).

After review of the record, the Court finds that the ALJ conducted the required assessment of Plaintiff's symptoms of pain, consistent with SSR 16-3p and the relevant regulations, and that his assessment is supported by substantial evidence. The ALJ acknowledged the relevant regulations and Social Security Ruling and found Plaintiff's statements were not entirely consistent with the medical and other evidence. (Tr. 15-16). He discussed several relevant factors, including the objective evidence; Plaintiff's reports of pain to his providers; the long period during which Plaintiff did not complain of back pain even when he went to the doctor; the treatments Plaintiff received, including the long period in which Plaintiff took nothing more than over-the-counter medications; Plaintiff's report to a specialist that he did not have gait trouble; and Plaintiff's ability to drive and engage in some other activities. (Tr. 15-17).

Plaintiff argues that the two-and-a-half-year gap in treatment for Plaintiff's back pain could be explained by lack of access to medical care during the COVID-19 pandemic and/or by

11

Plaintiff's depression related to his son's death, and he argues that the ALJ should have considered those issues. The Court finds little to no support for these arguments in the record. At the hearing, Plaintiff denied that COVID delayed his getting treatment for his back and leg pain. (Tr. 51). He also did not indicate that his son's death had delayed his getting treatment for his back and leg pain. Moreover, as discussed above, Plaintiff *did* seek treatment for other issues during 2019 and 2020. The ALJ's failure to discuss these issues does not significantly undermine his analysis of Plaintiff's subjective complaints of pain.

In sum, the Court finds that the ALJ conducted a proper evaluation of Plaintiff's claimed symptoms, considered relevant factors, and gave good reasons for finding those symptoms not entirely consistent with the record. The evaluation of a claimant's subjective symptoms is "primarily for the ALJ to decide, not the courts." *Igo v. Colvin*, 839 F.3d 724, 731 (8th Cir. 2016) (quotation marks omitted). The Court defers to the ALJ's evaluation of Plaintiff's subjective symptoms. *See Renstrom v. Astrue*, 680 F.3d 1057, 1065 (8th Cir. 2012) (citing *Juszczyk v. Astrue*, 542 F.3d 626, 632 (8th Cir. 2008)).

## VI.    CONCLUSION

For all of the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 10th day of March, 2026.

12